UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY FERNANDES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JPMORGAN CHASE BANK, N.A., ) <br> SUCCESSOR IN INTEREST FROM THE ) <br> FEDERAL DEPOSIT INSURANCE ) <br> CORPORATION, AS RECEIVER FOR ) <br> WASHINGTON MUTUAL BANK; ) <br> FEDERAL DEPOSIT INSURANCE ) <br> CORPORATION, ) <br> ) <br> Defendants. ) | No. 11 C 652 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stanley Fernandes sues JP Morgan Chase Bank, N.A. ("Chase"), successor in interest from the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank, and the Federal Deposit Insurance Corporation ("FDIC"). Fernandes seeks the rescission of a home equity line of credit and statutory damages for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and its implementing regulations, Federal Reserve Board Regulation Z set forth at 12 C.F.R. § 226 *et seq.* (2011) ("Regulation Z"). Presently before the Court is Chase's motion to dismiss Fernandes' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 7, Def.'s Mot.) For the reasons stated below, the Court denies in part and grants in part Chase's motion.

### RELEVANT FACTS

Fernandes is the owner and resident of a single family property located at 2016 Eastview Drive, Des Plaines, Illinois 60018 ("Subject Property"). (R. 1, Compl. ¶ 4.) From approximately

February 19, 2003, until October 26, 2006, Fernandes owned the Subject Property free and clear of any lien or security interest resulting from any debt. (*Id.* ¶ 10.) On October 26, 2006, Fernandes obtained a home equity line of credit ("HELOC") from Washington Mutual ("WaMu") in the amount of $100,000.00 ("Original HELOC") in connection with the Subject Property. (*Id.* ¶ 11.) The proceeds from the Original HELOC were used for personal, family, or household purposes. (*Id.*) As part of this consumer credit transaction, WaMu retained a security interest in Fernandes' home. (*Id.* ¶ 12.)

On or about May 25, 2007, Fernandes increased the Original HELOC by $246,461.00 ("Second HELOC"), thereby increasing the principal balance of the entire HELOC to $346,796.00 ("Modified HELOC"). (*Id.* ¶ 14.) The proceeds from the Second HELOC were used for personal, family, or household purposes. (*Id.*) In conjunction with the Second HELOC, WaMu increased the amount of the security interest retained in Fernandes' home. (*Id.* ¶ 15.) Fernandes alleges that in the course of extending the Second HELOC, "WaMu failed to make material disclosures required under TILA and Regulation Z for open-end credit." (*Id.* ¶ 16.)

Thereafter, on September 25, 2008, the FDIC, as receiver of WaMu, facilitated Chase's purchase and acquisition of WaMu's assets through a Purchase and Assumption Agreement ("P&A Agreement"), including Fernandes' loan.[1] (R. 1, Compl. ¶¶ 6-7; R. 8, Def.'s Resp., Ex. B.)

---

[1] Fernandes does not dispute "the existence or validity of the P&A Agreement." (R. 13, Pl.'s Resp. at 4.) Additionally, the P&A Agreement is publicly available on the FDIC's website: http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf. Accordingly, the Court takes judicial notice of the P&A Agreement. *See Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from the official website of the FDIC).

2

On January 7, 2010, Fernandes sent a Notice of Right to Cancel to WaMu at the address stated on the Notice of Right to Cancel in an attempt to rescind the Modifed HELOC. (R.1, Compl. ¶¶ 18-19; Ex. C at 4.) Fernandes' Notice of Right to Cancel was delivered to that address on January 11, 2010. (*Id.* ¶ 20; Ex. D.) Chase failed to acknowledge Fernandes' loan cancellation, to return all funds received from Fernandes, and to void any security interest held in Fernandes' home, within 20 days of receiving Fernandes' Notice of Right to Cancel. (*Id.* ¶ 23.)

## PROCEDURAL HISTORY

On January 28, 2011, Fernandes filed a one-count complaint seeking to enforce his right to rescind the Modified HELOC and to recover statutory damages pursuant to 15 U.S.C. §§ 1635 and 1641. (R. 1, Compl ¶¶ 1, 19, 21.) On March 15, 2011, Chase filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). (R. 7, Def.'s Mot.) Chase argues that Fernandes' claims are barred by Article 2.5 of the P&A Agreement entered into between the FDIC, as receiver of WaMu, and Chase. (R. 8, Def.'s Mem. at 3-6.) In the alternative, Chase argues that Fernandes' claims fail because WaMu was not required to provide TILA disclosures during the Second HELOC transaction, which it characterizes as a loan modification. (*Id.* at 6-7.)

## LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a

'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

## ANALYSIS

Fernandes asserts claims for rescission and damages against Chase pursuant to 15 U.S.C. §§ 1635 and 1641 and Regulation Z, 12 C.F.R. § 226.15. Fernandes seeks to enforce his right to rescind the Modified HELOC, and seeks recovery of statutory damages for violations of the TILA. (R. 1, Compl.¶¶ 1, 32, 59.) Chase argues that Fernandes' claims should be dismissed because they are barred by the P&A Agreement, "which explicitly states that Chase is not subject to liability for WaMu borrower claims arising before that date." (R. 8, Def.'s Mem. at 1.) Specifically, Chase argues that Plaintiff's rescission and damages claims against Chase are barred by Article 2.5 of the P&A Agreement. (R. 8, Def.'s Mem. at 3-5.) Even if the P&A Agreement does not bar Fernandes' claims, Chase argues that they should still be dismissed because WaMu was not required to provide TILA disclosures in connection with the Second HELOC, which Chase characterizes as a loan modification. (R. Def.'s Mem. at 6.)

I.   **TILA and Regulation Z**

The TILA is designed to assure consumers seeking credit obtain "meaningful disclosure of credit terms" so as to "protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a). The TILA and Regulation Z provide consumers with a right to rescind any credit transaction in which a security interest is retained in the consumer's principal dwelling. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.15(a). In addition to rescission, the TILA allows a court to award statutory damages for TILA violations pursuant to Section 1640. 15 U.S.C. § 1635(g); 15 U.S.C. 1640(a). And, the TILA further clarifies that "[a]ny consumer who has the right to rescind a transaction under section 1635 . . . may rescind the transaction as against any assignee of the obligation." 41 U.S.C. § 1641(c).

Regarding the right to rescission, each consumer whose ownership interest is subject to the security interest has a right to rescind "each credit extension made under the plan; the plan when the plan is opened; a security interest when added or increased to secure an existing plan; and the increase when a credit limit on the plan is increased." 12 C.F.R. § 226.15(a)(1)(i). The consumer has "the right rescind the transaction until midnight of the third business day following the consummation of the transaction," 15 U.S.C. § 1635(a), delivery of the notice of the right to rescind, or "delivery of all material disclosures, whichever occurs last." 12 C.F.R. § 226.15(a)(3). If the required notice and material disclosures are not delivered, the right to rescind expires three years "after the occurrence giving rise to the right of rescission." 12 C.F.R. § 226.15(a)(3); 15 U.S.C. § 1635(f).

A consumer exercises his right to rescind a credit transaction by notifying the creditor of his intention to do so. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.15(a)(2). Once a consumer

5

exercises his right to rescind, the security interest giving rise to the right of rescission becomes void. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.15(d)(1). Within 20 days after receipt of a notice of rescission, a creditor must return to the consumer any money given by the consumer as a downpayment and "must take any action necessary to reflect the termination of the security interest." 12 C.F.R. § 226.15(d)(2); 15 U.S.C. § 1635(b).

Here, Fernandes seeks to enforce his rescission of the Modified HELOC and to recover statutory damages from Chase. (R. 1, Compl. ¶ 1.) Chase argues that Fernandes' claims for rescission and statutory damages should be dismissed because they are barred by the P&A Agreement. Chase further argues that Fernandes' claims should be dismissed because WaMu was not required to provide new disclosures in connection with the Second HELOC, as it characterizes that transaction as a loan modification.

## II. Fernandes' Rescission Claim

The TILA allows consumers with a right to rescind under Section 1635 to "rescind the transaction as against *any assignee* of the obligation." 41 U.S.C. § 1641(c) (emphasis added). Although neither the TILA or Regulation Z define the term "assignee," Regulation Z provides that "[u]nless defined in this regulation, the words used have the meanings given to them by state law or contract." 12 C.F.R. § 226.2(b)(3). Accordingly, the Court looks to the ordinary usage of the term "assignment" to determine whether Chase may be considered an "assignee" under the TILA. *See e.g., Wilbourn v. Advantage Fin. Partners*, No. 09-2068, 2010 WL 1194950, at *6 (N.D. Ill. Mar. 22, 2010) (noting that TILA does not define who qualifies as an assignee and looking to ordinary usage of the term "assignment" to determine if defendants could be considered assignees). An "assignment" is "[t]he transfer of rights or property," Black's Law

6

Dictionary, 136 (9th ed. 2009), and an "assignee" is "[o]ne to whom property rights or powers are transferred by another." *Id.* Under Article 3.1 of the P&A Agreement, the FDIC sold, assigned, transferred, conveyed, and delivered to Chase, "all right, title, and interest of [the FDIC] in and to all of the assets . . . of [WaMu]." (R. 8, Def.'s Mem., Ex. B.) Under the ordinary meaning of the term "assignment," it is clear that WaMu's assets were transferred by the FDIC, as receiver for WaMu, to Chase pursuant to Article 3.1 of the P&A Agreement. Accordingly, Chase may be treated as an assignee under TILA because Chase is one to whom property rights were transferred by the FDIC.

Nonetheless, Chase maintains that Fernandes' rescission claim is barred by the P&A Agreement. (R. 8, Def.'s Mem. at 3.) Specifically, Chase relies upon Article 2.5 of the P&A Agreement. (*Id.* at 4.) Article 2.5 states that Chase expressly did not assume "any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower." (*Id.*, Ex. B.) Although Fernandes concedes that "[t]he P&A Agreement protects Chase from certain liabilities stemming from otherwise actionable acts or omissions of WaMu committed prior to the FDIC's takeover[,]" Fernandes maintains that "the P&A Agreement does not act as a bar to a valid TILA rescission claim against Chase." (Pl.'s Resp. at 4-5.)

This issue has been extensively litigated before other district courts. Those courts have not, however, uniformly addressed the effect the P&A Agreement has on a borrower's claim for rescission pursuant to TILA. *See Rundgren v. Wash. Mut. Bank*, No. 09-00495, WL 2010 4960513, at *6 (D. Haw. Nov. 30, 2010) (reviewing cases that have addressed the effect of the P&A Agreement on TILA rescission claims). A few courts have dismissed a plaintiff's

7

rescission claim on the basis of a cursory analysis. *See Rosenfeld v. JPMorgan Chase Bank*, 732 F. Supp. 2d 952, 960 (N.D. Cal. 2010). Other courts have dismissed a plaintiff's rescission claim on alternative grounds, such as where a property was sold prior to plaintiff's exercise of his rescission rights or where the claim was time-barred. *See Rundgren*, 2010 WL 4960513, at *6 (collecting cases); *Jones-Boyle v. Wash. Mut. Bank*, No. 08-02142, 2010 WL 2724287, at *9 (N.D. Cal. July 8, 2010) (rejecting argument that the P&A Agreement barred plaintiff's rescission claims, but dismissing claim on another basis); *Johnson v. Great W. Funding*, No. 09-2301, 2009 WL 4723364, at *2-3 (N.D. Cal. Dec. 4, 2009) (noting that plaintiffs failed to respond to Chase's motion to dismiss and rejecting rescission claim because plaintiff did not allege an ability to tender loan proceeds).

A third set of courts have allowed the rescission claim to stand. These courts have held that the P&A Agreement does not insulate Chase from a rescission claim because "TILA's rescission remedy is exercisable against the holder of the asset, not the retainer of the liability." *King v. Long Beach Mortg. Co.*, 672 F. Supp. 2d 238 (D. Mass. 2009); *see also Rundgren*, 2010 WL 4960513, at *7 (discussing cases and dismissing all claims except plaintiffs' TILA rescission claims); *cf. Wilbourn*, 2010 WL 1194950, at *6 (N.D. Ill. Mar. 22, 2010) (relying on *King* to find that subsequent assignee of mortgage in plaintiff's home was an assignee under the TILA and so TILA rescission claim against defendant was proper). In *King*, the plaintiff attempted to rescind a mortgage loan made by WaMu. 672 F. Supp. 2d at 243. There, Chase moved for summary judgment and argued that the P&A Agreement barred plaintiff from rescinding the mortgage because the "FDIC expressly retained liability for rescission[.]" *Id.* at 242. The court denied Chase's motion for summary judgment, and concluded that Chase was an assignee under the

terms of the TILA. *Id.* at 248.

The court in *King* found that plaintiff could exercise its rescission claim against Chase for two reasons. First, the court relied upon the ordinary meaning of the term assignment and reasoned that "just because liabilities are retained by the transferor does not mean the transferee is not an assignee. Under TILA, it is the assignee who is subject to the consumer's statutory right to rescind the loan transaction." *Id.* Because Chase had acquired the rights to the loan transaction at issue, the *King* court determined that Chase was an assignee for purposes of the TILA. *Id.* Next, the court recognized that "TILA refers to the consumer's right to rescind as 'his right to rescind.' A right belonging to the consumer ought not be extinguishable by a contract between the original assignee of the mortgage (FDIC) and its subsequent acquirer (Chase), without the consumer's consent or input." *Id.* The court further noted that it would be "contrary to Congressional intent to allow the rescission right to be contracted away in the manner suggested by Chase." *Id.* (citation omitted). Other district courts have recently agreed that "a borrower may nonetheless allege a rescission claim against the assignee such as Chase [because finding] otherwise would leave a borrower with no rescission remedy, a result clearly not contemplated by § 1641(c)." *Rundgren*, 2010 WL 4960513, at *7; *Jones-Boyle*, 2010 WL 2724287, at *9 ("Accepting [Chase's] argument would leave [plaintiff] with no remedy at all, even if she could show that [Chase] is committing ongoing TILA violations.").

The Court is persuaded by those courts that have found that a borrower may allege a rescission claim against Chase, since finding otherwise would be contrary to congressional intent and would leave Fernandes without a rescission remedy. Accordingly, Chase's motion to

9

dismiss Fernandes' rescission claim based on the P&A Agreement is denied.[2]

Looking to avoid this result, Chase argues it assumed no liability for Fernandes' claim. According to Chase, "[n]umerous courts have dismissed TILA rescission and damages claims against Chase, where . . . the rescission claims are based on TILA disclosures provided by WaMu prior to September 25, 2008." (R. 8, Def.'s Mem. at 5.) The cases Chase relies upon, however, fail to analyze the P&A Agreement in light of Section 1641(c) which governs a consumer's right to rescind against any assignee, and are therefore not persuasive. *See Goodwin v. Cal. Reconveyance Co.*, No. 09-3191, 2010 WL 3341831, at *1-3 (E.D. Cal. Aug. 23, 2010) (granting motion to dismiss in light of plaintiff's "utter failure" to respond to defendants' motion to dismiss and refusing to address whether defendants were assignees in regard to the TILA); *Newbeck v. Wash. Mutual Bank*, No. 09-1599, 2010 WL 3222174, at *2-3 (N.D. Cal. Aug. 13, 2010) (dismissing rescission claim because plaintiff's property had already been sold); *Hilton v. Wash. Mutual Bank*, No. 09-1191, 2009 WL 3485953, at *1 (N.D. Cal. 2009) (no rescission claim at issue); *Rosenfeld*, 732 F. Supp. 2d at 960 (relying on *Hilton*, 2009 WL 3485953, at *1,

---

[2] Chase argues in a footnote that "Plaintiff's TILA rescission claim also fails because he has not alleged he is willing and able to tender the money he borrowed." (R. 8, Def.'s Mot. at 6, n.3.) The Seventh Circuit has not addressed the issue of whether it is necessary for a borrower to allege an ability to tender the loan proceeds before rescission is granted, and courts in this District are divided on this issue. *See Stewart v. BAC Home Loans Servicing*, No. 10-2033, 2011 WL 3510909 (N.D. Ill. Aug. 10, 2011) (comparing cases and refusing to strike defendant's affirmative defense alleging that plaintiff's claims were barred because she did not allege a willingness to tender the property or amount at issue). In support, Chase relies on *Tulumbuta v. Wilmington Fin. Inc.* No. 09-4123, 2010 WL 1791271, at *2 (N.D. Ill. May 3, 2010). Upon reconsideration of its May 3, 2010 Memorandum Opinion and Order, however, the district court reversed its earlier position and held that "TILA regulations [and] case law . . . taken together, suggest that a requirement that the homeowners allege that they are willing and able to tender is erroneous." *Tulumbuta v. Wilmington Fin., Inc.*, No. 09-4123, 2010 WL 6738070, at *2 (N.D. Ill. June 24, 2010). Because Chase fails to develop this argument, and the case it cites in support reconsidered its position, the Court declines to dismiss the Complaint on this basis.

to summarily dismiss plaintiff's rescission claim); *Gusenkov v. Wash. Mut. Bank*, No. 09-4747, at *3 (N.D. Cal. June 24, 2010) (rescission claim barred by statute of limitations). Because the cases relied upon by Chase are distinguishable, and because finding otherwise would be contrary to congressional intent, the Court finds that the P&A Agreement does not bar Fernandes' rescission claim against Chase.

### III. Fernandes' Claim for Statutory Damages

In addition to rescission, the TILA allows a court to award statutory damages for TILA violations. Pursuant to Section 1635(g), "in any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind." 15 U.S.C. § 1635(g). Fernandes alleges that Chase is liable for any disclosure violations appearing on the face of the loan documents. (R. 1, Compl. ¶ 25.)

Chase argues that Fernandes cannot maintain his damages claims against it because under the terms of the P&A Agreement, Chase assumed no liability for Fernandes' claims, (R. 8, Def.'s Mem. at 3-4), all of which relate to WaMu's lending activities. Although this argument was not successful as it pertained to Fernandes' rescission claim, it prevails as it relates to Fernandes' statutory damages claims which are grounded on actions committed by WaMu. Several courts have addressed Chase's liability under the P&A Agreement for borrowers' damages claims arising from actions taken by WaMu in connection with its lending activities. *Rundgren*, 2010 WL 49660513, at *6; *see also Danilyuk*, No. 10-712, 2010 WL 2679843, at *3-4 (W.D. Wash. July 2, 2010) (discussing cases). These courts have repeatedly dismissed TILA damages claims based on actions committed by WaMu and brought against Chase because "they

11

have interpreted the P&A Agreement to mean that Chase is shielded from liability for borrower claims [since] liability for such claims remains with the FDIC." *Id.* at *6. In so holding, these courts have noted that "Article 2.5 of the P&A Agreement relieves Chase of all liability for borrowers' claims relating to loans made by [WaMu] prior to September 25, 2008." *Danilyuk*, 2010 WL 2679843, at *4.

To the extent that borrower's claims are based on actions committed by Chase after Chase's assumption of WaMu's assets, however, such claims are not barred by the P&A Agreement because Chase did not disclaim liability for its own actions. *See Jones-Boyle*, 2010 WL 2724287, at *8 (N.D. Cal. July 8, 2010) (noting that claims against Chase for the conduct of WaMu *before* September 25, 2008, were barred by Article 2.5 of the P&A Agreement, but that actions by Chase *after* Chase assumed plaintiff's loan were not so barred); *Miller v. Cal. Reconveyance Co.*, No. 10-421, 2010 WL 2889103, at *3 (S.D. Cal. July 22, 2010) (dismissing claims pre-dating the P&A Agreement, but analyzing remaining claims to the extent they allege liability for acts after September 25, 2008). Indeed, Chase concedes as much when it notes that the P&A Agreement "entered into between Chase and the [FDIC] on September 25, 2008, . . . explicitly states that Chase is not subject to liability for WaMu borrower claims arising before that date." (R. 8, Def.'s Mem. at 1.)

Here, Fernandes alleges that Chase is "liable for any disclosure violations that appear on the face of the loan documents." (R. 1, Compl. ¶ 25). To the extent that Fernandes' action is based on acts committed by WaMu prior to September 25, 2008, however, the P&A Agreement relieves Chase of this liability. Per Article 2.5 of the P&A Agreement, Chase did not assume potential liabilities associated with borrower claims; instead those liabilities remained with the

12

FDIC. *See e.g., Danilyuk*, 2010 WL 2679843, at *4 (rejecting plaintiff's damages claims where such claims stemmed from a loan transaction prior to September 25, 2008). Accordingly, to the extent Fernandes' damages claims against Chase are based on actions committed by WaMu, they are dismissed.

In addition, Fernandes' statutory damages claims based on actions committed by WaMu are also time-barred. Any action for damages under Section 1640 must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Fernandes alleges that the disclosure violations occurred in connection with the Second HELOC, which WaMu extended to Fernandes on May 25, 2007. (R. 1, Compl. ¶ 14.) Fernandes brought this action on January 28, 2011, well-beyond the TILA's one-year statute of limitations. Therefore, his claims for damages based on actions committed by WaMu are time-barred. *See Bills v. BNC Mortg., Inc.*, 502 F. Supp. 2d 773, 774-75 (N.D. Ill. 2007) (dismissing as time-barred plaintiff's claim for statutory damages against defendant for defendant's failure to provide required notice); *Tulumbuta*, 2010 WL 1791271, at *1-3 (granting creditors' motion to dismiss as to homeowners' statutory damages claim arising from a refinancing that occurred 3 years prior to filing of complaint).

To the extent Fernandes seeks damages from Chase for Chase's failure in 2010 to respond to Fernandes' notice of rescission, however, such claims are not barred by the P&A Agreement. *See e.g., Danilyuk*, 2010 WL 2679843, at *4. Although Chase briefly argues in a footnote that Fernandes' "claim for TILA damages" is barred by the TILA's one-year statute of limitations, (R. 8, Def.'s Mem. at 6, n.4), Chase fails to develop the argument as to why Fernandes' claim for damages based on Chase's failure to respond to Fernandes' notice of

13

rescission is time-barred.[3] Accordingly, the Court declines to dismiss Fernandes' statutory damages claim insofar as he seeks damages arising from Chase's failure to respond to Fernandes' notice of rescission.

### III. Whether New Disclosures Were Required When Extending the HELOC

Finally, Chase argues that Fernandes' complaint should also be dismissed because WaMu was not required to provide TILA disclosures in connection with the Second HELOC. As noted above, for any consumer credit transaction in which a security interest is retained in the consumer's principal dwelling, each consumer whose ownership interest is subject to the security interest has a right to rescind each increase in the credit limit for an open-end credit plan where a creditor fails to provide material disclosures. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.15(a)(1)(i)-(3). Material disclosures are defined as

> the disclosure . . . of the annual percentage rate [("APR")], the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a).

16 U.S.C. § 1602(u); *see also* 12 C.F.R. § 226.15(a)(3). In an open-end credit plan, new disclosures are required when increasing the credit limit. 15 U.S.C. § 1635(a).

Here, Fernandes alleges that in increasing the limit of the HELOC, an open-end credit plan, WaMu failed to provide him with the required material disclosures. (R. 1, Compl. ¶¶ 27-29.) Chase argues that Fernandes' claim for rescission fails because the "TILA does not require

---

[3] In its reply brief, Chase raises a new argument suggesting that it is not liable to Fernandes for statutory damages because it is an involuntary assignee. It is well-established, however, that arguments raised for the first time in a reply brief are waived. *See e.g., Mendez v. Perla Dental*, 646 F.3d 420, 423 (7th Cir. 2011). Therefore, the Court declines to address this argument at this time.

14

new disclosures for loan modifications." (R. 8, Def.'s Mem. at 6.) Chase attempts to classify the increase in the HELOC as a loan modification and argues that because such a loan modification is not a refinancing, TILA disclosures are not required. (*Id.*) In support of its argument, Chase cites to provisions of Regulation Z that control closed-end credit transactions, specifically, 12 C.F.R. § 226.20. Closed-end credit transactions, however, are distinct from open-end credit transactions and are controlled by different provisions of Regulation Z. *See Michel v. Beneficial Consumer Disc. Co. (In re Michel)*, 140 B.R. 92, 99 (Bankr. E.D. Pa. 1992) (discussing differences between closed-end and open-end credit plans). With respect to open-end credit transactions secured by a consumer's dwelling, otherwise known as home equity plans, 12 C.F.R. §§ 226.5b-226.6(a) list the disclosures that creditors must provide to consumers. These disclosures include the payment terms, the annual percentage rate, and the circumstances under which a finance charge will be imposed and an explanation of how it will be calculated. 12 C.F.R. §§ 226.5b-226.6(a).

Here, Fernandes alleges that in extending the HELOC, an open-end credit plan, WaMu failed to provide him with information concerning new APR terms, the method by which the finance charge would be computed, and new payment terms, (R. 1, Compl. ¶¶ 40-53), all of which were required to be provided under the terms of Regulation Z. Accordingly, the Court declines to dismiss Fernandes' Complaint on this basis.

## CONCLUSION

For the foregoing reasons, Chase's motion to dismiss (R. 7) is DENIED in part and GRANTED in part. The motion is granted as to Fernandes' claims seeking statutory damages against Chase based on actions committed by WaMu prior to September 25, 2008, and denied in

all other respects. The parties are requested to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status hearing on November 9, 2011, to set a firm litigation schedule. All discovery in this delayed lawsuit should be completed by February 29, 2012.

Entered: _____
Judge Ruben Castillo
United States District Court

**Dated:** October 13, 2011